UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CJ Bettis, | Case No. 22-cv-2283 (MJD/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden, *FCI Sandstone*, | |
| Defendant. | |

---

This matter is before the Court on Petitioner CJ Bettis' Petition for a Writ of Habeas Corpus ("Petition"), which challenges the United States Bureau of Prisons' ("BOP") calculation of credit for time served on his term of imprisonment. (ECF No. 1.) Mr. Bettis argues his term of imprisonment commenced on June 6, 2018, the date he was sentenced in federal court. Respondent contends the BOP properly determined his sentence did not begin until July 25, 2019, the date he was paroled from state custody on a term of imprisonment imposed in Minnesota state court. For the reasons given below, the Court finds the BOP properly calculated Mr. Bettis' sentence and recommends denying the Petition.

**I.      Background**

Mr. Bettis is currently serving concurrent 120-month terms of imprisonment on a June 18, 2018 conviction for Possession with Intent to Distribute Heroin and Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C). *See United States v. Bettis*, 17-CR-00048 (WMW/TNL) (ECF No. 103) (D. Minn. June 8, 2018). He is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota. The BOP calculates his projected release date as January 31, 2028 via good conduct time release. (ECF No. 9-1 at 3; ECF No. 1 at 9.)

1

Several years before the conviction at issue in this case, on November 21, 2012, Mr. Bettis was convicted in Minnesota state court on a charge of first-degree drug sales and sentenced to 82 months of incarceration. *State v. Bettis*, 27-CR-12-22256 (Minn. Dist. Ct. Nov. 21, 2012). He was discharged to supervised release under Minnesota's Challenge Incarceration Program on August 12, 2014. (ECF No. 9-8 at 1.) He subsequently absconded from supervision, and Minnesota authorities issued a warrant for his arrest on July 16, 2015. (*Id.*)

On February 10, 2017, Minneapolis Police Department officers arrested Mr. Bettis on multiple grounds, including the July 16, 2015 warrant (*see* ECF No. 9-8 at 1), a September 14, 2015 warrant on a July 7, 2015 driving after revocation charge, *State v. State v. Bettis*, No. 27-VB-15-6878 (Minn. Dist. Ct.) (*see* ECF No. 9-3 at 1-2), and the narcotics violations that led to his federal conviction and the term of incarceration at issue here (*see United States v. Bettis*, 17-CR-00048 (WMW/TNL) (ECF No. 1 at 9) (D. Minn. Feb. 13, 2017).

On February 13, 2017, a Minnesota district court judge sentenced Mr. Bettis on the driving after revocation charge to a 90-day term of imprisonment, with 86 days stayed for one year and four days credit for time served through the following day. (ECF No. 1-2 at 17; ECF No. 9-3 at 1.) That same day, the federal Government filed a Complaint against Mr. Bettis charging him with possession with intent to distribute heroin. *United States v. Bettis*, 17-CR-00048 (WMW/TNL) (ECF No. 1 at 1) (D. Minn. Feb. 13, 2017). A United States Magistrate Judge issued a warrant for Mr. Bettis' arrest on the Complaint (ECF No. 9-5) and granted the Government's application for a writ of habeas corpus *ad prosequendum* to remove Mr. Bettis from state custody into federal custody pending final disposition of the federal charges (ECF No. 9-4). He was taken into federal custody the next day, on February 14, 2017. (ECF Nos. 9-5; 9-6 at 2.)

On June 6, 2018, United States District Judge Wilhelmina Wright sentenced Mr. Bettis to three concurrent 120-month terms of imprisonment on one count of possession with the intent to distribute heroin and two counts of distribution of heroin. (ECF No. 9-7.) The Judgment did not refer to his state convictions or address whether his federal sentence should run concurrently with, or consecutively to, any term of imprisonment imposed in state court. (*See id.*)

The State of Minnesota issued a hold on Mr. Bettis at the time of his February 10, 2017 arrest, and according to both state and federal officials, he was in the primary custody of the State of Minnesota at the time of his federal sentencing. (*See* ECF Nos. 1-2 at 7; 9-9 at 1; 9-14.) Notwithstanding the hold, Mr. Bettis remained in the physical custody of the United States following his sentencing in federal court. The Marshals Service released Mr. Bettis to the custody of the BOP on July 10, 2018 and transported him to the Federal Correctional Institution at Sandstone, Minnesota ("SST" or "FCI-Sandstone"). (ECF No. 9-6 at 2.) BOP records suggest this may have been a mistake. (*See* ECF No. 1-2 at 11, Nov. 7, 2019 letter from the BOP to Mr. Bettis, stating "On June 6, 2018, you were sentence[d] in the District of Minnesota and although you were designated in error, you were will [sic] serving the state sentence.")

On June 15, 2018, Mr. Bettis received a Notice of Violation from the State of Minnesota for absconding from supervision in connection with his November 21, 2012 drug sale conviction in *State v. Bettis*, 27-CR-12-22256. He waived his right to a hearing on that matter and admitted to the violations alleged in the Notice of Violation. (ECF No. 9-8.) Minnesota authorities revoked Mr. Bettis' supervised release on June 15, 2018, required him to serve the original term of imprisonment, and imposed an additional 322 penalty days for the violation. (*Id.*; ECF No. 9-14.) On August 22, 2018, the United States Marshals Service picked Mr. Bettis up from FCI-Sandstone and delivered him to the Minnesota Department of Corrections to serve the remainder of his

3

sentences on the November 21, 2012 drug sale conviction and supervised release violation (*see* ECF No. 9-6 at 2).

On January 28, 2019, at Mr. Bettis' request, the BOP began a review of his federal sentence under 18 U.S.C. § 3621(b) for a possible retroactive (*nunc pro tunc*) designation to serve his federal sentence in state custody. (*See* ECF Nos. 9 ¶ 9; 9-9.) Designating state custody for service of Mr. Bettis's federal sentence would have allowed him to serve his federal and state terms of incarceration concurrently and reduced the total length of his incarceration. (*See* ECF No. 9-9.) On February 1, 2019, the BOP sent a letter to Judge Wright seeking guidance on her position regarding a retroactive designation to state custody in Mr. Bettis' case. (*Id.*, stating that "Mr. Bettis was under the primary jurisdiction of state authorities in Minnesota and in federal custody pursuant to a writ of habeas corpus" at the time of his sentencing.) On February 28, 2019, Judge Wright responded to the BOP's letter in a text-only order, stating that the "record reflects the sentence the Court imposed, and the Court will take no further action with regard to the letter" (ECF No. 9-10). The BOP sent Mr. Bettis a letter on March 1, 2019 stating that, in the absence of an order from Judge Wright that his federal and state sentences should run concurrently, it did not have the authority to credit time spent in state custody towards his federal sentence. (ECF No. 9-11.)

On July 25, 2019, upon completion of Mr. Bettis' term of incarceration in state custody on the 2012 drug sale conviction and supervised release violation, the State paroled him directly into federal custody. (*See* ECF No. 9-6 at 1; ECF No. 9-12.) In releasing Mr. Bettis into federal custody on that date, the State credited him with all the time he had served from February 10, 2017, the date of his arrest, to July 25, 2019, the date he was paroled into federal custody—whether he was in the physical custody of the United States Marshals Service, the BOP, or the Minnesota Department of Corrections during that period. (*See* ECF No. 9-14 at 1.) The BOP calculates Mr.

Bettis' term of imprisonment on his federal conviction based on a July 25, 2019 start date. (*See* ECF No. 9-1 at 3.)

II.   **Analysis**

   A.   **Post-Sentencing Credit**

Mr. Bettis argues his federal sentence commenced on June 6, 2018,[1] the date of his sentencing, and seeks 411 days of currently unawarded credit for time served from that date through July 25, 2019, the date he completed his term of incarceration on the state charges and the State paroled him into federal custody. (ECF No. 1 at 1–2, 15–17.) Mr. Bettis' argument is premised on the assertion that he was in the primary custody of the federal government at the time of his federal sentencing. (*Id.*) Respondent contends Mr. Bettis was in the State's primary custody from the date of his arrest on February 10, 2017 until July 25, 2019, that the BOP correctly calculated his sentence as running from a July 25, 2019 start date, and thus that no additional sentencing credit is owed to Mr. Bettis. (ECF No. 8 at 5–9.)

The BOP calculates the commencement of a federal term of imprisonment pursuant to 18 U.S.C. § 3585(a), which dictates that a "sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). The BOP must make this determination subject to the doctrine of primary jurisdiction. *See Wiseman v. Wachendorf*, 984 F.3d 649, 653–54 (8th Cir. 2021). Under that doctrine, the "first sovereign to establish physical custody over a criminal defendant [obtains

---

[1] The Petition states Mr. Bettis was sentenced on June 6, 2018 (ECF No. 1 at 1) and also, inconsistently, on June 8, 2018 (ECF No. 1 at 15). Based on the Court's review of the docket in that case, *United States v. Bettis,* 17-CR-00048 (WMW/TNL) (ECF Nos. 101, 103), Judge Wright sentenced Mr. Bettis on June 6 and filed the Judgment on June 8.

and] retains primary jurisdiction until it releases jurisdiction." *Id.* at 654 (citing *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013)). When a state is the first sovereign to establish primary jurisdiction over a prisoner and the prisoner is transferred to the United States via a writ of habeas corpus *ad prosequendum*, "the prisoner is considered merely 'on loan' from the State." *Id.* (citing *Elwell*, 716 F.3d at 481–82; *Binford v. United States*, 436 F.3d 1252, 1255–56 (10th Cir. 2006)). "The key question" in determining whether a sovereign transfers primary jurisdiction to another "is whether the first sovereign intended to relinquish its primary jurisdiction." *Id.* (citing *Johnson v. Gil*, 883 F.3d 756, 765 (9th Cir. 2018)). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail; 2) dismissal of charges; 3) parole; or 4) expiration of sentence." *Elwell*, 716 F.3d at 481 (citation and quotation omitted). If a detainee is in the primary jurisdiction of a state, any federal term of imprisonment imposed during that time cannot commence until the state relinquishes its primary jurisdiction such that the "United States assumes primary jurisdiction over the prisoner, and the prisoner is presented to serve his federal sentence." *Id.* at 653 (citing *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013); 18 U.S.C. § 3585(a)).

        **1.**     **Primary Custody on Arrest**

Mr. Bettis alleges he was in primary federal custody from the outset of his detention on February 10, 2017 because he was arrested on that date by DEA Agent Benjamin Henrich pursuant to a federal warrant. (ECF No. 1 at 5.) He contends the State detained him at the Hennepin County Jail following his arrest on behalf of the federal Government. (*Id.*) He further contends he was transferred to the custody of the United States Marshals Service on February 14, 2017 based solely on the warrant and without presentation of a writ of habeas corpus *ad prosequendum*. (*Id.*) Based

on these contentions he argues he was in the primary jurisdiction of the federal Government from the date of his arrest or, at the very least, from February 14, 2017 onward. (*Id.* at 5–6, 13–14.)

The record does not support Mr. Bettis' characterization of the facts, however. He could not have been in federal custody immediately following his arrest on February 10, 2017 because no federal warrant issued until February 13, 2017. (ECF No. 9-5.) Moreover, Hennepin County Sheriff's Office records indicate he was booked pursuant to state warrants on February 10, 2017 (ECF No. 9-2 at 5). He was convicted on one of the state charges—driving after revocation—on February 13, 2017 and credited for time served *in state custody* starting February 10, 2017. (ECF No. 9-3 at 1.) Furthermore, federal authorities only transferred him from state custody after obtaining a writ of habeas corpus *ad prosequendum.* (*See* ECF No. 9-4; ECF No. 9-6.) And the United States Marshal's Service USM-129 Custody/Detention Report indicates Mr. Bettis' federal case began on February 14, 2017 with a "WHCAP designation", which stands for writ of habeas corpus *ad prosequendum* (ECF No. 9-6 at 2). *See also Wiseman*, 984 F.3d at 653 n. 2 (noting that WHCAP stands for "writ of habeas corpus *ad prosequendum*"). The writ would not have been required or requested if State officials had intended to relinquish primary custody of Mr. Bettis at that time. The record thus supports Respondent's position that Mr. Bettis was in the State's primary custody beginning February 10, 2017 and borrowed from the State via the writ on February 14, 2017.

### 2. Primary Custody at Federal Sentencing

Because Mr. Bettis was in the State's primary custody initially, whether he can obtain post-sentencing credit for any time served between June 6, 2018 and July 25, 2019 turns on whether, at any point after February 14, 2017, the State *intended* to relinquish its primary jurisdiction. *See Wiseman*, 984 F.3d at 654. On reviewing the record in its entirety, the Court finds no indication

7

the State had such intent until July 25, 2019, when it finally paroled Mr. Bettis into federal custody. Mr. Bettis observes that the United States Marshals Service transported him to a BOP facility following his federal sentencing notwithstanding the State's continuing hold in connection with the supervised release revocation proceedings in the 2012 drug sale case. (ECF No. 1 at 8.) But whatever confusion this possible designation error may have generated, the federal Government's actions were not an indication of the *State's* intent to relinquish primary custody. Before July 25, 2019: Mr. Bettis was not released on bail; the supervised release revocation proceedings were not dismissed; he was not paroled into federal custody; and his sentence on the state drug sale charge did not expire. *See Elwell*, 716 F.3d at 481. That the State intended to retain primary custody is supported by the fact that Mr. Bettis completed his sentences on the 2012 drug sale charge and supervised release violation before he was transferred into federal custody to serve his federal sentence. It is further supported by the fact that the State credited him with time served for the entirety of his detention from February 10, 2017 to July 25, 2019—regardless of which authority's institution actually held him. For all of these reasons, the Court concludes the State retained primary custody over Mr. Bettis until July 25, 2019. Only at that point was Mr. Bettis "received in custody awaiting transportation to … commence service of [his] sentence at[] the official detention facility at which the sentence [was] to be served." 18 U.S.C. § 3585(a).

The Court further finds the BOP correctly determined Mr. Bettis' federal sentence should run consecutively to his state sentences, which concluded on July 25, 2019. (*See* ECF Nos. 9-7, 9-10); 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); *Elwell*, 716 F.3d at 482–484 (holding the BOP correctly interpreted a federal district court's silence on whether a federal sentence should be imposed concurrently or consecutively to an anticipated state term of

8

imprisonment as dictating the federal sentence should be served consecutively). When asked to clarify whether she intended Mr. Bettis' federal sentence to run concurrently with his state sentence, with full knowledge of the law and after having been put on notice of the term of imprisonment imposed by the State in connection with Mr. Bettis' supervised release revocation, Judge Wright declined to order concurrent sentences (ECF No. 9-9–9-10). The BOP thus correctly determined Mr. Bettis' federal sentence commenced on July 25, 2019, and he is not entitled to post-sentencing credit for time served from June 6, 2018 to July 25, 2019.

### B. Pre-Sentencing Credit

Mr. Bettis also seeks to have 476 days of credit applied to his federal sentence for time served before the date of his sentencing (ECF No. 1 at 2, 16–17, 19). He seeks credit for time spent in custody from February 10, 2017, the date of his initial arrest and detention, though June 5, 2018, the day before his sentencing on June 6, 2018. (*See id.*) Respondent argues Mr. Bettis is barred from seeking such credit under 18 U.S.C. § 3585(b) because the State credited this time against his state sentences. (ECF No. 8 at 7–11.)

Under 18 U.S.C. § 3585(b), a federal inmate is entitled to credit:

for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added). This language acts as an "express bar" to awarding credit for time served if that time was credited against another sentence. *Elwell*, 716 F.3d at 484. Since Mr. Bettis received credit on his state sentences for time served from February 10, 2017 through

9

June 5, 2018 (*see* ECF Nos. 9-3 at 1; ECF No. 9-14), the BOP is statutorily barred from awarding Mr. Bettis any credit for that time.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Bettis' Petition for a Writ of Habeas Corpus (ECF No. [1]) be **DENIED WITH PREJUDICE**.

Dated: January 24, 2024　　　　　　　　*s/ Dulce J. Foster*
　　　　　　　　　　　　　　　　　　　　Dulce J. Foster
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).